Good morning, Your Honor. Ismael Castro with the California Attorney General's Office representing the California Department of Rehabilitation. There was a question with respect to the allocation of time before argument today. We've agreed on behalf of the state to allocate at least five minutes of our time to the United States Attorney that's representing the Department of Education because this case involves the construction of a federal statute before the federal court and involves a federal matter principally. There were also other questions with respect to allocations of time that I'll allow. There are three parties, obviously. One is the real party in interest. So let me just understand. What amount of time were you planning to use? Can you stop the clock while we figure out what the allocation is? Yeah, I think if the state is given 20 minutes, then we would reserve some time for rebuttal. We would give five minutes to the United States, which I think if you divide the 20 minutes between the United States and the intervener, they would each have 10 minutes. So in this case, we would have 15 and the United States would have 15 and I believe the intervener would have 10, if that's acceptable with the court. Is that how it works? I'm George Langendorf on behalf of the intervener. Mr. Zillesen is the prevailing party below. He is the appellee. I think that he's entitled to 20 minutes given that the state and the federal agencies substantively agree on most of the arguments. So what we've allocated is 20 minutes for the Department of Rehabilitation for the state and 20 minutes for the split between the Department of Education and the intervener. And we didn't get any motion in advance about any different allocation of time. So how the Department of Education and the lawyer for Mr. Zillesen divide their time, it really has to be between the two of you. And then the state, if the state wants to give time, you're giving time as well to the... Yes, we're giving time, at least five minutes of our time at their request to the United States for the Department of Education. Your Honor, that's my point. The federal agencies are on the same side. Their interests are aligned. And the reason that you didn't receive a motion beforehand is that throughout this process, we've always informally agreed that that was the case. And, for example, in the briefing, we agreed that Mr. Zillesen got extra pages to respond to the state and the federal agency. And the reason, by the way, that Mr. Zillesen is the intervener is that when the state appealed an arbitration award in Mr. Zillesen's favor, it didn't name him as a defendant. It didn't inform him of the arbitration. So he was forced to intervene. I would ask that he not be penalized for the shortage of argument minutes for that. He had no control over it. Judge Gold, you assigned me as the presiding judge, but I'd like to defer to your superior wisdom. Well, unless my colleagues want to disagree, what I would say is that we should let Mr. Zillesen, let the intervener have ten minutes. Let California Department of Education split its time with the U.S. attorney as it wants. And that's not exactly what the intervener wants, but he should be able to express his position in ten minutes. Thank you, Judge Gold. All right, we'll continue. I want to add for counsel to know the problem for us is we schedule these things based on orders on time. And some informal understanding of a party doesn't make it to us. So in the future, if you want specific level of time, you should file a motion so we can plan on. Can you sit back to 20? Thank you, Your Honor. This this case raises some significant concerns to the state of California and the operation. And at least they're part of the operation under the under the Randolph Shepard Act. I realize that many of the issues presented to this circuit are matters of first impression. There have been other circuits that have addressed the issues as to how the Randolph Shepard Act actually operates, in particular, Nash and Maryland. That's most significant in this particular case. We would we would offer the following analysis as to how to untangle the various layers of assumptions that have been occurring in this case for the last 10, 12, 14 years. And the first to begin would be the that the 2008 panel decision. And we would submit that it exceeded its jurisdiction in considering enforcement of the 2000 arbitration award on the following on for the following reasons. First of all, that that a 107 D1A proceeding is to address disputes between the state and the and the vendor regarding the operation and management of the programs, the management and operation of the programs that the state is responsible for is fairly set out in the state's regulations and the and the code sections with respect to selection of vendors and the the dismissal of vendors. For example, the support of vendors, the education of vendors and things of that nature. And so with respect, there is no provision that that speaks with respect to the enforcement of a prior arbitration decision. Let me just ask a more basic question. So in this 2008 arbitration decision, the the order was that the state had to take some sort of enforcement action against GSA. Is that correct? Yes. And so I was when I was reviewing the statute, I didn't see any statutory basis that either gave the state the discretion or compelled the state to bring that sort of enforcement action against a federal agency. Is there anything in the statute that that authorizes or requires the state, the state SLA, to bring an enforcement action to enforce any sort of provision, any sort of arbitration decision? Well, no. Actually, there is a Nash speaks about in with respect to disputes between the state and federal government. There is one B, which basically allows the state to seek arbitration to to address concerns between the state and federal government. And that's discretionary, correct? That's not required. That's correct. And Nash makes pretty clear the 11th Circuit decision makes pretty clear that that's a may rather than a shall. And that's the discretionary function on behalf of the state. There is no separate wording, shall, may, could or would language that exists with respect to enforcement of prior decisions. So if the state were going to enforce it, if it decided to do it, say, or if it complied with the arbitration order, what is the mechanism where you would bring an enforcement action against the GSA? Well, we're not sure. Actually, I don't think we've ever done it. We would be very cautious about suing the federal government. We would perhaps, there would be a cause of action under the APA, and that would be for injunctive and declaratory relief only, perhaps. There may be other forms that we could try. I know under the Maryland case, there the state of Maryland did seek an enforcement action. I'm not sure of the theory that they applied. And it wasn't questioned with respect to whether the state had standing or whether it was outside the statutory scheme for the state to seek enforcement action. But apparently they filed some form of action in the district court. I don't know whether we have that same option here for California. We have never really tried it. And so it's not clear from the 2008 decision as to what type of action they wanted us to file, except to say that they thought we should be compelled to file a complaint against the federal government. So it's as nebulous as that. Any kind of action against the federal government, again, our reading of the statute is that the enforcement of an action against the federal government by the state is self-enforcing in the sense that the language specifically puts the burden on the head of the state agency that's been found to have violated the Rano-Shepard Act to remedy the situation. That sounds self-enforcing to me. It sounds self-enforcing to so many other districts or circuits that have addressed the issue. And there's really no room for the enforcement action on behalf of the state. In your brief, you argue that Mr. Zellickson could have sued to enforce the 2000 arbitration decision, I think you said either under the APA or under the All Writs Act. Now, how would that work? Would he have been a person aggrieved by the 2000 arbitration decision? What would be the basis for Mr. Zellickson to bring that action? Well, we thought that perhaps there could be some kind of real party in interest or standing that Mr. Zellickson would have in order to enforce the 2000 arbitration decision. I'm not sure of the theory that he could have applied, but at least there could have been an effort on his part. He had two attorneys, separate attorneys at different times that were representing him. He sent personal representatives that represented him as well. We thought that if the state is not, for some reason or another, is not compelled to file a complaint, perhaps Mr. Zellickson could at least explore that avenue as a remedy, rather than compel the state under the facts here to basically file the complaint on his behalf. Which raises another question with respect to, let's assume that there is such a duty and responsibility on the part of the state to file an action against the federal government given these circumstances and setting aside the fact that the enforcement of the 1B arbitration between the state and the federal government is self-executing, setting that aside and with all those assumptions in place, what do we look at in terms of enforcement? We would submit that the 2000 panel decision is not enforceable with respect to what it is that Mr. Zellickson was looking for. And that specific relief of his placement back in the Roybal building as well as the damages that he was seeking, we agree or we should say that we don't disagree with the federal government when they say that the 2000 award for damages is not enforceable because of the bar of sovereign immunity. We also don't disagree. That would be from 1997 to 2000, is that the, because if there had been a super injunctive relief brought immediately, I guess that could have stopped the damages going forward. Yes. Yeah, I think that's right because I think there was an interest, interest was accruing, and I'm not sure from, I think there was a period of time that it would stop accruing and it would stop accruing when he became, when he was reinstated to his position at the Roybal facility. But we also do not disagree with respect to the award of specific relief. There are a number of circuits that have already decided the issue that a panel in a 1B proceeding between a state and federal government can't grant specific relief as well as damages, and we agree with that. So what really is left in the 2000 decision except finding that the federal government improperly canceled the agreement or the contract between the state and federal government as in placing a vendor at the Roybal facility, and that was the only part of it that would have been enforceable. Let's assume that in fact the damages and the, and again this is another layer of assumptions, let's just say that assuming that the damages and the specific relief is enforceable, then you get to the question of what standard to apply with respect to the state of California on whether it sues the federal government or not. Nash talked about how it's not, first of all the standard wasn't articulated, but what type of discretion if any is given the state on whether to sue the federal government or not, and there was no standard that was applied, articulated. Nash talked about it's a non-reviewable decision or discretionary decision on the part of the state government because how can you gauge that? For example, do you consider whether any part of the 2000 award is not enforceable? Do you consider, what does the panel do? I mean if the panel decides that maybe a district court would not have enforced the 2000 decision because it was in excess of their jurisdiction, I mean is the panel members capable of making those kinds of legal decisions or not? So it's just really, it's a quagmire of issues that really a panel, an arbitration panel under these circumstances is not equipped to decide. But if you look at the decision itself, it really doesn't talk about that. It distinguishes, a district court distinguishes Nash and paid no heedance to Maryland and simply said you're compelled to do it because there's no other way. Well that's not a standard. That basically imposes a new language in the statute that doesn't exist. And it sounds like strict liability. If you don't, then you're liable. The cost shifts. You're liable to the damages that were awarded against the federal government without examining whether the damages were enforceable or not from the beginning. So it raises all kinds of issues with respect to how this arbitration panel ultimately decided this case. We are considerably concerned about being strictly liable and being compelled to sue the federal government under all circumstances. And that should not be the standard. That can't be the standard. It doesn't look like it's the proper standard under the statute. Can I just interject another basic question? Is this program voluntary for the state? In other words, is the state required to participate in the Randolph Shepard program or is it a volunteer? It's a voluntary. It's federal government asking through statute and by way of Congress if states are willing to participate in these programs. And that's what we have. It's a voluntary program. And it's for the benefit of blind vendors to operate vending facilities in both state and federal properties. It's a good program. It provides an income to blind vendors who otherwise may not have the opportunity, but it is strictly voluntary. So my concern was it's discretionary to trigger this arbitration that you did in 2000. And if the result is then you get penalized if it's not enforced the award, isn't that a disincentive to trigger that sort of arbitration provision? Well, absolutely. There isn't any other case that is held in this fashion. And I would think that not only would it be a disincentive to the state of California to continue to participate in this program, but also other states as well. And this would be the only court that has addressed this issue. And the finding that there is strict liability under these circumstances would certainly be a disincentive to participate, and that's why it's significant to the state of California at least to be aware of where their liabilities lie or where they're vulnerable. With respect to the equities, it's something that should be pointed out. The state of California, rather than sue the federal government, spent a considerable amount of time and energy in seeking to arbitrate or to negotiate with the GSA to a solution to this problem. It should be pointed out that in a sense that was fruitful because in February of 2003 we had an offer from GSA to place Mr. Zelikson, in fact, in the Roybal facility, but that was rejected. And it's both reflected in the letter from the Attorney General's Office to GSA and Mr. Zelikson's testimony that he would not accept reinstatement unless the monetary damages were provided to him. And so it's not that the state didn't do anything during this period of time, but I think they were working at trying to get a fair resolution in this case, but he just didn't. I think both the panel and the district court recognized that the department exercised its best effort, and that's exactly what the state attempted to do in this case. And yet despite that best effort, and because there was no other way, somehow now we have to pay the damages portion that the federal government says they're not liable for. That logic doesn't make any sense to us. There is another issue with respect to the amount. There is a lot of discussion with respect to the fact that the 2000 decision was final and binding and should not have been disturbed. Well, on the one hand, with respect to calculation of damages, on the one hand they said that couldn't be disturbed with the question of enforceability, that the federal government was required to pay the damages. But on the other hand, they recalculated damages. So it's ironic that they found on one hand it's final and binding. On the other hand, they reopened that issue and recalculated the amount of damages. And in that sense, in our view, that would constitute an abuse of discretion as well on the part of the panel members. With the court's permission, I'll reserve the remainder of my time for rebuttal. Thank you. That's about 47 seconds. And then the government. Are you taking his five minutes or are you speaking on the other side? How are you doing this now? Well, I thought I was taking his five minutes. Okay. So he's got 47 minutes left. 47 seconds, yes. 47 minutes would be a long argument. Just started. May it please the court? I'm Jennifer Kajinkas-Lee from the Department of Justice on behalf of the Secretary of Education, who is the appellee and cross-appellant here. The federal government agrees with the state that the 2008 arbitration panel decision was issued in excess of the arbitration panel's authority. We have slightly different reasons for our belief that the arbitration panel decision was an error. In essence, the 2008 panel was proposing to enforce the 2000 arbitration panel decision. The district court here essentially said because the federal government did not appeal from the 2000 decision, that it was final and binding and that the 2008 arbitration panel acted within its authority in enforcing that decision. The 2000 panel decision, however, was invalid itself because that decision purported to hold the United States government liable for money damages and specific relief, and it is our position that the Randolph-Shepard Act does not provide any remedial authority to an arbitration panel that has been convened to arbitrate a dispute between a state licensing agency and a federal agency. And the Maryland case and the Nash case that are cited in the briefs stand for that proposition. The 2000 panel also purported to award money damages against the federal government. And there's been no waiver whatsoever of sovereign immunity for money damages, and nor does the statute mention money damages in any respect. As we discussed in our brief, the arbitration scheme that is set forth in the Randolph-Shepard Act establishes a dual scheme, one that governs the disputes between the state licensing agency and the federal government, and one that governs disputes between a blind vendor and the state licensing agency. And in an arbitration between the SLA and the federal government, the statute places the duty to rectify any violation of the act on the head of the federal agency, and it does not give the panel authority to order any kind of relief. But in looking at that argument, I said, well, but if the head of the federal agency doesn't do anything, how does the blind vendor get relief? I mean, why isn't that itself enforceable, at least for injunctive relief? Well, the blind vendor in that instance doesn't have any. It's the state licensing agency in that 2000 decision who would have been able to enforce, to attempt to enforce the decision of the arbitration panel and not the vendor. The vendor has no right against, but under the Maryland case, the four circuit in the Maryland case suggested that in order to enforce a decision, if the state licensing agency thought that the federal entity was not complying with the arbitration panel decision, that it could seek another arbitration to enforce it. And in that Maryland case, the Maryland Department of Rehabilitation Services brought suit in district court under mandamus and federal question jurisdiction, and then actually the state could bring suit, I believe, under the APA if it were not for this damages, if it was not for this damages. If it was trying to enforce, just as counsel for the SLA stated, if they were trying to get injunctive relief or declaratory relief, we could seek to enforce a decision under the APA, but because the APA does not waive the federal government's immunity for money damages, then they would not be able to bring suit under that. So while the state has the discretion to seek to enforce an arbitration panel decision, we believe that the district court and the panel erred in holding that it was required to. And the reason that we're here today is to make the point that we believe that the district court, there were several errors in the district court's decision. One that I mentioned before about that because the federal government did not appeal, that the decision became final and binding. We believe that was error because the Randolph-Shepard Act makes no provision whatsoever for the federal government to appeal. And in essence, it would be the government suing itself if it were to attack a decision. Let me just interrupt you. I think what we do now is we, that uses up the five minutes, and so then you have ten minutes. So can you put ten minutes on the clock? Okay. Sorry. It's okay. It's quite unusual. So the, but because the 2000 arbitration panel had no authority to award the damages, it would be the district court's decision. And if there was any specific relief, then the 2008 panel didn't have any authority to, or the state would have, it would have been futile for the state to have tried to sue the government to enforce that 2000 panel decision. But you're saying theoretically the state, and there was a case where the state could, or there was some sort of vehicle for the state to enforce the arbitration award, is there any vehicle for the individual to appeal? Is there any vehicle for the individual blind vendor to enforce it, since they're the one that is actually affected or injured by the federal agency's refusal to comply? Well, the cases that are cited in our brief that have looked at the question have all agreed that there's no, and the statute itself provides no mechanism for a blind vendor to appeal. To sue the federal government directly. Because under the statutory scheme, there's no relationship between the federal government and the blind vendor. The relationship is between the state licensing agency and the blind vendor, and between the state licensing agency and the federal government. So the blind vendor's remedy is to try to convince the state licensing agency to seek an arbitration or file a complaint of grievance against the federal entity. And it's the federal government that is the one that has the right to do that. And the vendor himself or herself would not have a right to bring a direct action against the federal government. The statute does not allow for the blind vendor to file a grievance against the federal government or to seek arbitration against the government. So the state is saying, the state's counsel is saying, well, maybe under the APA, maybe there's some other mechanism outside of the Randall Shepard Act itself. Well, as we discuss in our brief, I think in part three of our brief, when Congress has created a complex statutory scheme like it has here with the Randall Shepard Act, and it has provided for specific mechanisms for administrative and judicial review, and has designated in the statute what parties have the right to file a complaint, then it's generally held that no other party has that right. It's exclusive under the statutory scheme. And here, the Randall Shepard Act is that type of a statutory scheme where it has this elaborate dual mechanism for resolving disputes. And under that scheme, a blind vendor simply does not have any rights directly against the federal government. And unless the court has some other questions for me, I believe I have addressed the concerns that we have. Thank you. I have no questions. Thank you. Ten minutes. May it please the Court. My name is George Langendorf. I'm here on behalf of Mr. Zellison. Mr. Zellison was removed from the Roybal Building in 1997. He was removed without good cause, and he was removed without process. And it's now 14 years later, and that violation of the Randall Shepard Act is undisputed, has been conceded here today by the state and the federal agencies, continues unabated. Is it correct that there was an offer made to your client to reinstatement in the building? No, Your Honor. And that he turned it down because he didn't get the money damages, or he couldn't do it without the money damages? That is not correct. The 2008 panel considered evidence on that issue and found that the evidence was not credible. And, in fact, the evidence     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Weighing of that evidence should only be overturned if the court finds it arbitrary and capricious. And I think it's well supported in the record. So given that the dispute or the violation of the Shepard Act is ongoing, the question is, and you've asked Judge Ikuda twice today, what is to be done? What is the remedy that the blind vendor has? And the answer is the blind vendor can only sue if it exhausts its administrative remedies under the Act. So before the blind vendor could seek to compel the federal agency to reinstate him, he has to exhaust administrative remedies. The administrative remedies are to bring an arbitration against the state, which Mr. Tillerson did, which is the decision that we're ultimately here today debating. So can't you, having done everything you can do under the Act, I guess why can't your client have as much possibility, I guess as the state, to bring an action which has to be outside of the Act? Because the Act doesn't contemplate enforcement action in court against the federal government. So whether it's under the APA or it's under the Alberts Act, or there's other possible extra statute mechanisms, why can't your client go ahead and do that? Well, this proceeding here is still his administrative remedies. He brought an arbitration against the state to force the federal agency to stop violating the Act. He prevailed. The state appealed. And the district court affirmed. And the state appealed again. So he's still in the process of exhausting his administrative remedies. And if this court were to reverse and that became final, then Mr. Zelikson, in my view, could just bring an act to enforce the Randolph-Shepard Act, bring an action and the court would have federal question jurisdiction to say that the federal agency, if Mr. Zelikson were to sue GSA after this court reversed, then... So you're saying that your client actually could take this question into court and enforce the arbitration panel's determination against the GSA. Well, if he loses. If he lost at this level. But if that's the process, then it's now 14 years. And justice delayed is justice denied. And both parties here have also conceded that the state had the right to sue, to compel the federal agency to comply in 2000, 10 years ago. And the state is positioned as the protector of the blind vendor in the Act. And by virtue of there being an arbitration decision against the federal agency, that fact means that the state just brought an arbitration. So the party that's positioned well to sue the federal agency is not the blind vendor. It's the state who has attorneys and expertise and resources and who has just brought essentially a litigation on that same question. Do you agree that there's nothing in the Act that requires the state or even authorizes the state to bring an enforcement action against the federal agency? No, I don't. Not at all. I think the state is obligated to do so. What in the statute requires that or authorizes that? I think the structure of the statute requires that. Because as we've discussed, the blind vendor has no recourse. And if you look at the legislative history of the Act, the whole reason that the arbitration provisions were added to the Act was that the federal agencies were abusing it. And there are multiple citations in the brief. So the suggestion that Congress said federal agencies are abusing the Act, so what we should do is give federal agencies discretion of whether or not to comply with the Act doesn't make any sense. And the idea that they would say the reading of the Act is that they put in place the state agency to be the protector of the blind vendor. But the Act says if the feds lose with the state, the SLA, then the head of the agency has an obligation to comply with the panel decision. That's right. So that's what Congress said, and they didn't put in anything about and if the head still is a scofflaw, then the state is authorized to go to district court or must go to district court and enforce it. Well, I think that they did that. It makes perfect sense if you think about what they're saying. The reason for that sentence is the statute instructs a federal agency to abide by the decision of another federal agency. It says the Department of Education is going to have an arbitration panel, there's going to be a final agency action, and you, the General Services Administration, must comply. Now, as Ms. Jenkins said, that seems like a conflict between the government and the government. So to clarify that, the only reasonable interpretation of that statement is Congress said, let there be no doubt, you, federal agency, must comply with that order. So do you see, for purposes of damages, for money damages, where do you find the waiver of sovereign immunity? Do you find it in that language, or where do you find it? I find it to be unnecessary in this particular case because the damages are against the state for its failure to protect Mr. Sellerson, similar to the damages that were awarded in Primo v. Martin. Right, so there's compensatory damages. We've held that, that the state is liable. But the state is supposed to then sue, was supposed to, under the, I guess the order was they should have sued the federal government. Is there a waiver of sovereign immunity so that even could it get the damages that was awarded by the arbitration panel? Well, first, there's a waiver, at a minimum, to the extent that they could have sued to reinstate Mr. Sellerson. And all of Mr. Dellickson's damages flow from the fact that he was not reinstated. What about the pre-2000, the 1997 to 2000 damages? Well, the Do you agree that there's no No. There's no waiver for that, or is there? Again, I would say that there doesn't need to be one because the 2000 arbitration panel found that the violation of the act was the responsibility of both the federal agency and the state agency. It found failure by the state agency to protect Mr. Sellerson and keep him in failure to work with the federal agency. And so when the 2008 panel applied damages beyond 2000 into the 1990s, that was justifiable based on that record. And in addition, the state has always had the ability to place Mr. Sellerson into a comparable location. Mr. Sellerson implored the state to do that. So the state could have said in 1997, all right, we have a dispute with the federal agency. We are going to work that out. But in the meantime, we're going to help you get into another location that can help you mitigate your damages. But they didn't do that. So for those two reasons, I think it's justifiable for the arbitration panel to extend the damages back to 1997. And I think that the standard for whether that was justifiable is whether it was arbitrary and capricious for the panel to do that, given that there is evidence in the record to support it. My counsel, I have a question, and that is, have you, your client, and the federal agencies, and the state ever tried to mediate? Yes, Your Honor. The first thing that Judge Matt said when we came before him was that this seemed like a travesty of federalism and quite a morass, and he instructed the parties to take off their lawyer hats, I think he said, and mediate this dispute. And we attempted to do that, and without going into the particulars of the mediation, there was no significant relief available. And I guess my time is running down. I'd like to stress again that the violation is ongoing today. The state has the ability today to sue the federal agency to comply. There's been no reason given by anyone why that shouldn't happen. And because I feel the responsibility of that falls on the state licensing agency, I would respectfully ask this Court to affirm. We'll give the state a minute. In my 47 seconds that I have. We'll give you a whole minute. Okay. Thank you. With respect to the placement of Mr. Zellickson in a comparable facility, keep in mind, though, that the record shows that in 1997, about the time we were advised by the federal agency that they were going to cancel the permit to operate a vending facility in the Roybal, he was actually placed in the L.A. County Traffic Court, where he is today. So he hasn't been without income, he hasn't been without a facility, he's actually been that. And that placement in that facility was interim in the sense that it only is supposed to last six months. But since 1997, he's remained in that facility in order to accommodate his needs for an income. So there has been some accommodation. Another thing to keep in mind as well, we would ask that the whole basis for the damages award against the state, the shifting of the liability of the state is only premised on the validity of the 2000 award. There isn't anything that the department did separate and apart from not suing the federal government. So to look at the state as liable under these circumstances just doesn't make any sense. So if the damages award somehow goes away in the 2000, from the 2000 decision because it's in excess of jurisdiction, then there shouldn't be any damages award against the state of California. With that, we submit. Thank you. Thank you. You know, we really can't do that. I'm sorry. The case of Sauer versus Department of Education is submitted and we're adjourned for the day. All rise.
judges: Noonan, Gould, Ikuta